# EXHIBIT L

ST. CLAIR COUNTY EMPLOYEES'
RETIREMENT SYSTEM, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

    vs.

ACADIA HEALTHCARE COMPANY, INC.,
et al.,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 3:18-cv-00988

CLASS ACTION

District Judge William L. Campbell, Jr.
Magistrate Judge Alistair E. Newbern

LEAD PLAINTIFFS' REPLY IN FURTHER
SUPPORT OF UPDATED MOTION FOR
CLASS CERTIFICATION

- 1 -

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     DEFENDANTS FAIL TO REBUT THE *BASIC* PRESUMPTION....................................2

        A.      Defendants Bear the Burden of Proving a Complete Absence of Price
                Impact by a Preponderance of the Evidence............................................................2

        B.      Defendants Concede Price Impact for the October 2017 Disclosure ......................3

        C.      Defendants Fail to Prove a Complete Lack of Price Impact for the October
                11, 2018 *Aurelius Value* Report..............................................................................3

                1.      Substantial Evidence Establishes That the *Aurelius Value* Report
                        Impacted Acadia's Stock Price ....................................................................4

                2.      The Absence of a Statistically Significant Market Reaction on a
                        Single Day Does Not Establish a Lack of Price Impact .............................6

                3.      Defendants' "Other Evidence" is Fundamentally Flawed ..........................8

        D.      Defendants Fail to Prove a Complete Lack of Price Impact for the
                November 16, 2018 *Seeking Alpha* Article...............................................................9

                1.      Defendants' Analysis of 15 Minutes of Intraday Trading Is
                        Meaningless ..............................................................................................10

                2.      Defendants' Other Stated Reason for the Price Decline on
                        November 16, 2018 Was Directly Related to the Fraud...........................11

        E.      Defendants' Arguments Regarding "Generic" Statements and Other
                "Similar" News Stories Fail to Establish a Lack of Price Impact..........................13

III.    PLAINTIFFS ARE ENTITLED TO THE *AFFILIATED UTE* PRESUMPTION
        OF RELIANCE...................................................................................................................15

IV.     COMMON ISSUES PREDOMINATE AS TO PLAINTIFFS' SCHEME
        CLAIMS ............................................................................................................................17

V.      CONCLUSION..................................................................................................................20

4864-5297-2570.v1

Case 3:18-cv-00988   Document 133   Filed 04/01/22   Page 2 of 32 PageID #: 4193

## TABLE OF AUTHORITIES

Page

**CASES**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) ............................................................................................. *passim*

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................................... 1

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ....................................................................................................... 16

*Aranaz v. Catalyst Pharm. Partners Inc.*,
302 F.R.D. 657 (S.D. Fla. 2014) ..................................................................................... 3

*Basic Inc. v. Levison*,
485 U.S. 224 (1988) ................................................................................................ *passim*

*Binder v. Gillespie*,
184 F.3d 1059 (9th Cir. 1999) ....................................................................................... 16

*Bing Li v. Aeterna Zentaris, Inc.*,
324 F.R.D. 331 (D.N.J. 2018), *aff'd*, *Vizirgianakis*
*v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019) ............................................ 7

*Burges v. Bancorpsouth, Inc.*,
No. 3:14-cv-1564, 2017 WL 2772122
(M.D. Tenn. June 26, 2017), *leave to appeal denied sub nom. In re BancorpSouth,*
*Inc.*, No. 17-0508, 2017 WL 4125647 (6th Cir. Sept. 18, 2017) ............................ 1, 2, 16, 18

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ...................................................................................... 7

*City of Cape Coral Mun. Firefighters' Ret.*
*Plan v. Emergent Biosolutions, Inc., HQ*,
322 F. Supp. 3d 676 (D. Md. 2018) ................................................................................. 3

*Clayton, Jr. v. Heartland Res., Inc.*,
No. 1:08CV-94-JHM, 2010 WL 4778787
(W.D. Ky. Nov. 16, 2010) ............................................................................................. 16

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ......................................................................................................... 19

4864-5297-2570.v1

*Cosby v. KPMG, LLP*,
No. 3:16-CV-121-TAV-DCP, 2020 WL 3548379
(E.D. Tenn. June 29, 2020) ...................................................................................19

*Cosby v. KPMG, LLP*,
No. 3:16-CV-121-TAV-DCP, 2021 WL 1828114
(E.D. Tenn. May 7, 2021) ...............................................................3, 16, 17, 19

*Cox v. Collins*,
7 F.3d 394 (4th Cir. 1993) ...................................................................................16

*Desai v. Deutsche Bank Sec. Ltd.*,
573 F.3d 931 (9th Cir. 2009) ...............................................................................18

*Dodona I, LLC v. Goldman, Sachs & Co.*,
296 F.R.D. 261 (S.D.N.Y. 2014) ........................................................................16

*Doe v. Simpson*,
No. C-1-08-255, 2009 WL 2591682
(S.D. Ohio Aug. 19, 2009) ...................................................................................17

*Erica P. John Fund, Inc. v. Halliburton Co.*,
309 F.R.D. 251 (N.D. Tex. 2015) ..........................................................................8

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
_U.S._, 141 S. Ct. 1951 (2021) ..................................................................2, 13, 14

*Grae v. Corr. Corp. of Am.*,
330 F.R.D. 481 (M.D. Tenn. 2019) .......................................................3, 6, 12, 19

*Grae v. Corr. Corp. of Am.*,
No. 3:16-cv-2267, 2021 WL 1100799
(M.D. Tenn. Mar. 23, 2021)...........................................................................10, 15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014).......................................................................................2, 9, 14

*IBEW Loc. 98 Pension Fund v. Best Buy Co., Inc.*,
818 F.3d 775 (8th Cir. 2016) .................................................................................8

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021), *cert. denied*,
*Alphabet v. Rhode Island*, 142 S. Ct. 1227 (2022) ...............................................18

4864-5297-2570.v1

*In re BancorpSouth, Inc.*,
   No. 17-0508, 2017 WL 4125647
   (6th Cir. Sept. 18, 2017)..................................................................................8

*In re Firstenergy Corp.*,
   No. 2:20-cv-3785, 2022 WL 681320
   (S.D. Ohio Mar. 7, 2022) ........................................................................16, 18

*In re Interbank Funding Corp. Sec. Litig.*,
   629 F.3d 213 (D.C. Cir. 2010) .................................................................16

*In re Intuitive Surgical Sec. Litig.*,
   No. 5:13-cv-01920-EJD, 2016 WL 7425926
   (N.D. Cal. Dec. 22, 2016) .......................................................................8

*In re Petrobras Sec.*,
   862 F.3d 250 (2d Cir. 2017)....................................................................7

*In re Silver Wheaton Corp. Sec. Litig.*,
   No. 2:15-cv-05146-CAS, 2017 WL 2039171
   (C.D. Cal. May 11, 2017) .......................................................................16

*In re St. Jude Med., Inc. Sec. Litig.*,
   836 F. Supp. 2d 878 (D. Minn. 2011) ..................................................14

*In re Teva Sec. Litig.*,
   No. 3:17-cv-558 (SRU), 2021 WL 1197805
   (D. Conn. Mar. 30, 2021) .......................................................................18

*Johnston v. HBO Film Mgmt., Inc.*,
   265 F.3d 178 (3d Cir. 2001).....................................................................16

*Joseph v. Wiles*,
   223 F.3d 1155 (10th Cir. 2000), *abrogated on
   other grounds by Cal. Pub. Emps.' Ret. Sys. v.
   ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017) ..................................................16

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005)....................................................................18

*Loc. 703, I.B. of T. Grocery & Food Emps.
   Welfare Fund v. Regions Fin. Corp.*,
   No. CV-10-J-2847-S, 2014 WL 6661918 (N.D. Ala. Nov. 19 2014).......................6

4864-5297-2570.v1

*Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*,
No. 16-112 (MN) CONSOLIDATED, 2020 WL 5026553,
at \*5 (D. Del. Aug. 25, 2020) ...............................................................................16

*Lorenzo v. SEC*,
_ U.S. _, 139 S. Ct. 1094 (2019)......................................................................2, 18

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
437 F.3d 588 (7th Cir. 2006), *vacated and remanded on other*
*grounds by Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007) ..........................14

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
164 F. Supp. 3d 568 (S.D.N.Y. 2016).................................................................18

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,
332 F.R.D. 556 (M.D. Tenn. 2019), *order clarified*, 334 F.R.D. 118
(M.D. Tenn. 2019), *and leave to appeal denied sub nom. In re Cmty.*
*Health Sys., Inc.*, No. 19-0509, 2019 WL 5549319 (6th Cir. Oct. 23, 2019) ..........................19

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
830 F.3d 376 (6th Cir. 2016) ...................................................................8, 12, 19

*Pirnik v. Fiat Chrysler Autos., N.V.*,
327 F.R.D. 38 (S.D.N.Y. 2018) ........................................................................7, 15

*Puddu v. 6D Glob. Techs., Inc.*,
No. 15-cv-8061 (AJN), 2021 WL 1198566
(S.D.N.Y. Mar. 30, 2021) ..................................................................................18

*Ret. Sys. v. Prudential Fin., Inc.*,
No. 12-5275, 2015 WL 5097883
(D.N.J. Aug. 31, 2015)..........................................................................................7

*Ret. Sys. v. S. Co.*,
332 F.R.D. 370 (N.D. Ga. 2019).................................................................. *passim*

*Rooney v. EZCORP, Inc.*,
330 F.R.D 439 (W.D. Tex. 2019) .........................................................................7

*Schwartzman v. Morningstar, Inc.*,
No. 12-1647, 2014 WL 3843875
(E.D. Pa. Aug. 5, 2014)........................................................................................16

4864-5297-2570.v1

*SEC v. Kameli*,
  No. 17 C 4686, 2020 WL 2542154
  (N.D. Ill. May 19, 2020) .........................................................................................18

*SEC v. Rio Tinto PLC*,
  No. 17 Civ. 7994 (AT), 2021 WL 818745
  (S.D.N.Y. Mar. 3, 2021) ..........................................................................................18

*SEC v. Rio Tinto PLC*,
  No. 21-2042 (2d. Cir.)..............................................................................................18

*SEC v. SeeThruEquity, LLC*,
  No. 18 Civ. 10374(LLS), 2019 WL 1998027
  (S.D.N.Y. Apr. 26, 2019).........................................................................................17

*Strougo v. Barclays PLC*,
  312 F.R.D. 307 (S.D.N.Y. 2016), *aff'd*,
  *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017)..........................................8

*Thiemann v. OHSL Fin. Corp.*,
  No. C-1-00-793, 2001 WL 34142349
  (S.D. Ohio Sept. 14, 2001).......................................................................................19

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
  No. 13-6731, 2016 U.S. Dist. LEXIS 102304
  (E.D. Penn. Aug. 4, 2016)..........................................................................................7

*Weiner v. Tivity Health, Inc.*,
  334 F.R.D. 123 (M.D. Tenn. 2020) .........................................................................20

## STATUTES, RULES AND REGULATIONS

17. C.F.R.
  §240.10b-5 .........................................................................................................14, 18

Federal Rules of Civil Procedure
  Rule 23 .....................................................................................................................19
  Rule 23(a).................................................................................................................1
  Rule 23(b)(3)............................................................................................................16

# I.     INTRODUCTION

This securities fraud action is ideally suited for class treatment.  Defendants do not challenge any of the requisite elements of Rule 23(a).  And while Defendants challenge predominance as to just part of the Class Period, the Supreme Court has recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud."[1] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). This securities fraud case is no different, and the Class should be certified.

Defendants ***concede*** the Class should be certified for an eight-month portion of the Class Period that relates to misstatements concerning the financial performance of the Priory Group – a U.K.-based behavioral health company that Acadia acquired in 2016.  This concession dooms their attempt to prove a complete lack of price impact.  And even if it did not, Defendants have utterly failed to rebut the *Basic Inc. v. Levison*, 485 U.S. 224 (1988), presumption of reliance for the portion of the Class Period they do challenge.  Defendants concede Acadia stock traded in an efficient market and have not met their heavy burden of proving an absence of price impact.  In fact, as shown in the Rebuttal Report of W. Scott Dalrymple, CFA, Ex. A ("Dalrymple Rebuttal"), there is overwhelming evidence of price impact.

Plaintiffs are also entitled to the *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), presumption of reliance, as the Complaint alleges affirmative misrepresentations and omissions.  There is no prohibition against certifying a class under both *Basic* and *Affiliated Ute*.  In fact, this Court recently certified such a class in *Burges v. Bancorpsouth, Inc.*, No. 3:14-cv-1564, 2017 WL 2772122, at \*10 (M.D. Tenn. June 26, 2017), *leave to appeal denied sub nom. In re BancorpSouth, Inc.*, No. 17-0508, 2017 WL 4125647, at \*1 (6th Cir. Sept. 18, 2017).

---

[1]     All internal citations are omitted and emphasis added unless otherwise indicated.

Finally, Defendants' predominance challenges to Plaintiffs' scheme allegations are baseless. Their contention that the alleged scheme cannot consist of alleged misstatements and omissions is irreconcilable with *Lorenzo v. SEC*, _ U.S. _, 139 S. Ct. 1094 (2019), where the Supreme Court rejected this exact argument. Moreover, Defendants' claim that Plaintiffs have failed to identify the conduct that comprised the alleged scheme ignores an entire section of the Complaint explaining Defendants' fraudulent course of conduct. Complaint, §IV. Finally, Defendants' assertions about complications in calculating damages for the scheme claims do not come close to demonstrating that damages cannot be calculated in a formulaic fashion for all class members.

## II. DEFENDANTS FAIL TO REBUT THE *BASIC* PRESUMPTION

Plaintiffs have established, and Defendants do not dispute, that Acadia stock traded in an efficient market. Motion at 14-18.[2] Having successfully invoked the presumption of reliance, the burden shifts to Defendants to rebut the presumption by proving a complete lack of price impact.

### A. Defendants Bear the Burden of Proving a Complete Absence of Price Impact by a Preponderance of the Evidence

To rebut the *Basic* presumption, Defendants must demonstrate by a preponderance of the evidence that the "asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 280 (2014) ("*Halliburton II*"); *Burges*, 2017 WL 2772122, at *9; *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, _U.S._, 141 S. Ct. 1951, 1958 (2021) ("*Goldman*") ("[O]ur precedents require defendants to bear the burden of persuasion.").

Defendants seek to rebut the *Basic* presumption by contending that on two dates when the circumstances concealed by Defendants' fraud were revealed – October 11, 2018 and November 16,

---

[2]  Defendants' expert Lucy P. Allen testified that she adopted the claim of market efficiency for purposes of her analysis. Ex. B ("Allen Depo. Tr.") at 22:17-23:9.

- 2 -

2018 – Acadia's stock price did not react to that news. Opp. at 8-20. To carry their burden, Defendants must prove that ***100%*** of the price reactions on the alleged corrective disclosure dates were caused by information entirely unrelated to Plaintiffs' allegations. This is a "daunting task," *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 673 (S.D. Fla. 2014) – one that requires Defendants to ***prove*** that the fraud-related news caused "***no price impact whatsoever.***" *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 687 (D. Md. 2018); *Cosby v. KPMG, LLP*, No. 3:16-CV-121-TAV-DCP, 2021 WL 1828114, at *5 (E.D. Tenn. May 7, 2021).

### B. Defendants Concede Price Impact for the October 2017 Disclosure

As an initial and dispositive matter, Defendants have failed to rebut the *Basic* presumption by conceding price impact for the first Class Period corrective disclosure on October 24, 2017.

> This concession dooms Defendants' attempt to rebut the presumption of reliance because the inquiry is whether Defendants have proven a complete lack of price impact during the Class Period, not whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage.

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 395 (N.D. Ga. 2019) ("*Southern*"); *see also Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 500 n.8 (M.D. Tenn. 2019) ("Because [defendant] has failed to rebut the *Basic* presumption regardless, that issue [*i.e.*, whether another corrective disclosure evidences price impact] should [be] left for the merits stage of litigation."). Because Defendants have failed to establish a "complete lack of price impact during the Class Period," the Court's price impact analysis need go no further. *Southern*, 332 F.R.D. at 395. In any case, Defendants' contentions regarding the remaining two disclosures are also defective.

### C. Defendants Fail to Prove a Complete Lack of Price Impact for the October 11, 2018 *Aurelius Value* Report

On October 11, 2018, *Aurelius Value* published a report and video documenting systemic

- 3 -

abuse and neglect at dozens of Acadia facilities caused primarily by understaffing. Complaint, ¶¶9, 185-187. Following this news, Acadia's stock price declined 5.2% on October 11, 2018, and another 4.1% on October 12, 2018. *Id.*, ¶189; ECF No. 121-1 ("Allen Report") at 17.

Defendants argue that the release of the *Aurelius Value* report had no impact on Acadia's stock price because the price decline on October 11, 2018 alone was not statistically significant. Opp., §I.A.; Allen Report, VII.A.[3] But Defendants ignore that the price decline for the two-day window actually alleged in the Complaint (October 11-12, 2018) ***was*** statistically significant. *See* Complaint, ¶189; Dalrymple Rebuttal, ¶28. Thus, this statistically significant price reaction is ***proof*** of price impact. Defendants also disregard significant market commentary directly linking Acadia's stock price declines to the *Aurelius Value* report.

### 1. Substantial Evidence Establishes That the *Aurelius Value* Report Impacted Acadia's Stock Price

As explained in the Dalrymple Rebuttal, Acadia's stock experienced a statistically significant abnormal return of 6.4% in the two-day period following the *Aurelius Value* report – *i.e.*, October 11-12, 2018. Dalrymple Rebuttal, ¶28.

Using a two-day window for analyzing the *Aurelius Value* report is appropriate. Contrary to Defendants' suggestion that a stock price must react within one day, "the Supreme Court has expressly refused to 'adopt any particular theory of how quickly and completely publicly available information is reflected in market price.'" *Southern*, 332 F.R.D. at 391 (quoting *Basic*, 485 U.S. at 248 n.28) (endorsing the use of two-day event window in price impact analysis). That is why multi-day event windows are routinely used in securities fraud cases. *See, e.g.*, "Materiality and Magnitude: Event Studies in the Courtroom," David I. Tabak and Frederick C. Dunbar, in Litigation

---

[3] As explained in Section III.C.2., *infra*, a non-statistically significant price reaction does ***not*** prove an ***absence*** of price impact.

Services Handbook, The Role of the Financial Expert, 3rd ed., Roman L. Weil, Michael J. Wagner, and Peter B. Frank, eds. John Wiley & Sons, Inc., 2001, p. 194 ("In securities fraud cases, *many experts have adopted the convention of looking at one-day, two-day, or five-day periods following an announcement*."); "Event Studies in Economics and Finance," A. Craig MacKinlay, Journal of Economic Literature, Vol. XXXV, pp. 14-15, March 1997 ("In practice, the period of interest is often expanded to multiple days, including at least the day of the announcement and the day after the announcement.").  Moreover, the complexity of the information released in the Aurelius Value report suggests that the market continued to digest the news after publication.  Dalrymple Rebuttal, ¶29.  An October 11, 2018 Cantor Fitzgerald analyst report noted that "*[a]ssessment of [the Aurelius Value report] [c]ould [t]ake [t]ime*" because it was based on a "review of thousands of pages of public documents, including more than 600 state and federal inspection reports."  Ex. C at 1; *see also* Ex. D (Credit Suisse on *Aurelius Value* report: "[O]ur experience has been that *it takes time to assess allegations such as those raised in this report*.").

Additionally, a number of contemporaneous news articles published on October 11, 2018 attributed declines in the price of Acadia stock directly to the *Aurelius Value* report, further demonstrating price impact:

- Bloomberg: "Acadia Healthcare falls ~5 percent after investment firm Aurelius Value alleges patient 'neglect' in a new report due to understaffing at some of its facilities."  Ex. E.

- TheFlyOnTheWall.com: "Acadia Healthcare slides after Aurelius publishes short report. . . . In morning trading, Acadia shares are down about 6%."  Ex. F.

- Bloomberg: "Acadia Healthcare Co. shares fell as much as 8 percent after a short seller alleged 'widespread patient abuse and neglect' at the behavioral health services firm."  Ex. G.

*See* Dalrymple Rebuttal, ¶32.  Market analysts had the same reaction.  That same day, a managing director at Mizuho Securities forwarded the *Aurelius Value* report to Acadia with the message, "*[t]his is why your stock is down today*."  Ex. H.  Credit Suisse similarly issued a report that same

- 5 -

day describing how "Acadia shares fell on Thursday, October 11th, ***after a short report was published to the Aurelius Value website***." Ex. D. On October 18, 2018, Cantor Fitzgerald explained that Acadia "stock has been volatile in the past few weeks, ***in part due to a short report by Aurelius Value which was published last week***." Ex. I. And a Bloomberg article described how Acadia's stock had been impacted by the *Aurelius Value* report: "***Acadia had its value dented just last week after a short-seller alleged that there has been 'widespread patient abuse and neglect' at the firm's facilities***." Ex. J.

This type of public and non-public commentary from market participants attributing the decline in Acadia stock to the *Aurelius Value* report "of course, is evidence of price impact." *Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. CV-10-J-2847-S, 2014 WL 6661918, at *7 (N.D. Ala. Nov. 19 2014); *see also Grae*, 330 F.R.D. at 500 ("Internal CoreCivic communications . . . are relevant to the price impact inquiry because those communications demonstrate how individuals knowledgeable about the private prison industry reacted to the Report.").

### 2. The Absence of a Statistically Significant Market Reaction on a Single Day Does Not Establish a Lack of Price Impact

Although the Complaint alleges a two-day decline on October 11-12, 2018 (which was statistically significant, *see* Dalrymple Rebuttal, ¶28), Defendants argue that because the stock decline on October 11, 2018 was not statistically significant they have proven an absence of price impact.[4] However, "the absence of a statistically significant price adjustment [on October 11, 2018]

---

[4] Acadia's stock price experienced a negative residual return on October 11, 2018 of -2.1%, meaning that the stock declined even after adjusting for market and industry effects. *See* Allen Report at 17. This alone dooms Defendants' attempt to prove a complete lack of price impact. *See Southern*, 332 F.R.D. at 397-98 ("Because Southern Company's stock price suffered negative residual returns following each of the alleged corrective disclosures, Defendants' citation to non-significance 'merely suggest[s] that another factor also contributed to an impact on a security's price.'").

- 6 -

does **not** show the stock price was unaffected by the misrepresentation." *Rooney v. EZCORP, Inc.*, 330 F.R.D 439, 450 (W.D. Tex. 2019) (emphasis in original) (citing *In re Petrobras Sec.*, 862 F.3d 250, 278-79 & n.30 (2d Cir. 2017)). That is, "[c]ontrary to Defendants' argument, ***the existence of [a] non-statistically-significant stock price decline[] does not prove the absence of price impact***." *Southern*, 332 F.R.D. at 393. The weight of authority is in accord. *See City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. 12-5275, 2015 WL 5097883, at *12 n.8 (D.N.J. Aug. 31, 2015) ("[I]t also does not necessarily follow from the mere absence of a statistically significant change in the stock price that there was no price impact."); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. 13-6731, 2016 U.S. Dist. LEXIS 102304, at *46 (E.D. Penn. Aug. 4, 2016) (same); *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 46 (S.D.N.Y. 2018) (holding that non-statistically significant stock price decline following corrective disclosure "does not prove the **absence** of price impact") (emphasis in original); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 95 (S.D.N.Y. 2015) ("The failure of an event study to find price movement does not prove lack of price impact with scientific certainty."); *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 345 (D.N.J. 2018), *aff'd*, *Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51 (3d Cir. 2019) (same).

As Mr. Dalrymple explains, "a non-statistically significant price reaction does not 'affirmatively demonstrate' a lack of price impact," which is why "academics have warned against relying on a lack of statistically significant abnormal returns to conclude an absence of price impact." Dalrymple Rebuttal, ¶25.

At bottom, a "non-statistically significant decline simply does not 'sever the link' between the alleged misrepresentations and corrective disclosures," *Southern*, 332 F.R.D. at 395, and Defendants' authority does not support the claim that where there is "no statistically significant

impact on the company's stock price, the *Basic* presumption does not apply."  Opp. at 11.  Indeed,

two of the cases cited by Defendants – *Erica P. John Fund, Inc. v. Halliburton Co.*, 309 F.R.D. 251

(N.D. Tex. 2015) ("*Halliburton III*") and *In re Intuitive Surgical Sec. Litig.*, No. 5:13-cv-01920-EJD,

2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) – were distinguished by the court in *Southern* as

inapplicable to the circumstances at bar.  *Southern*, 332 F.R.D. at 395 n.32.[5]

### 3. Defendants' "Other Evidence" is Fundamentally Flawed

Defendants' attempt to disprove price impact by pointing to intraday pricing on October 11,

2018 and commentary from market analysts is misguided.  *See* Opp. §I.A.2.

First, Ms. Allen's truncated analysis of two hours of intraday trading on October 11, 2018,

which she inexplicably cut off at 1 p.m. ET, Allen Report, ¶30, does not prove that the *Aurelius*

*Value* report did not impact Acadia's stock.  The first analyst report on the subject, "Story Alleging

Numerous Patient Issues Hits ACHC; Assessment of It Could Take Time," by Cantor Fitzgerald,

appears to have been finalized at 1:21 p.m. ET and first circulated to the market after 1:30 p.m. ET.

*See* Exs. C, K.  And as discussed above, the law does not "'conclusively . . . adopt any particular

theory of how quickly and completely publicly available information is reflected in market price,'"

---

[5]   Defendants' other cases are also distinguishable.  *See, e.g.*, *IBEW Loc. 98 Pension Fund v. Best Buy Co., Inc.*, 818 F.3d 775, 782 (8th Cir. 2016) (no discussion of statistical significance whatsoever); *In re BancorpSouth, Inc.*, 2017 WL 4125647, at *1 (same).  *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.* supports Plaintiffs' argument: "Because Defendants have the burden of showing an absence of price impact, they must show that price impact is *inconsistent* with the results of their analysis.  Thus, that an absence of price impact is consistent with their analysis is insufficient."  No. 4:08CV0160, 2018 WL 3861840, at *13 (N.D. Ohio Aug. 14, 2018) (internal citation omitted).  And *In re Moody's Corp. Sec. Litig.* is a poorly reasoned anomaly that has been discredited by more recent opinions from the same district.  *See Strougo v. Barclays PLC*, 312 F.R.D. 307, 324 n.110 (S.D.N.Y. 2016), *aff'd, Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (citing 274 F.R.D. 480 (S.D.N.Y. 2011)).

- 8 -

*Halliburton II*, 573 U.S. at 271-72, particularly where, as here, the news is complex.[6]  Thus, Defendants' two-hour analysis is meaningless.

Second, Ms. Allen's claim that an analysis of analyst reports is "consistent with the lack of a price reaction," Allen Report, ¶¶33-34, is not credible, as it completely ignores the market commentary discussed above that directly links the decline in Acadia's stock price to the publication of the *Aurelius Value* report.  *See* §II.C.1., *supra*; Exs. D, H.

### D. Defendants Fail to Prove a Complete Lack of Price Impact for the November 16, 2018 *Seeking Alpha* Article

On November 16, 2018, *Seeking Alpha* published an article titled, "Acadia Healthcare: Very Scary Findings From A 14-Month Investigation," which revealed that the Company's rapid growth was the result of cost cutting and "reducing the quality of care."  Complaint, ¶¶11, 190.  The article highlighted severe problems at multiple Acadia facilities and reported that, "due to the number of suicides at some of their facilities, Acadia's ability to accept certain patients has been restricted by state-level governments."  *Id.* ¶¶11, 190.  That same day, Acadia's share price declined 14%.  *Id.*, ¶¶11, 192; ECF No. 114-3.

Defendants assert that the *Seeking Alpha* report had no impact on Acadia's share price – based on 15 minutes of intraday trading data.  They contend this truncated analysis shows that the price decline was not due to information disclosed in the *Seeking Alpha* report, but was instead due to negative news about the potential sale of Acadia, which Ms. Allen claims was unrelated to the alleged fraud.  Opp., §I.B.; Allen Report, VII.B.  This argument fails to prove a complete lack of price impact.  First, Defendants ignore market commentary and the time it takes for the impact of the *Seeking Alpha* article to be fully incorporated into the stock price.  Second, the CNBC segment that

---

[6]  Defendants falsely claim that "'Plaintiffs' expert acknowledges, in an efficient market, Acadia's stock price would immediately reflect newly available 'value-relevant information.'"  Opp. at 12.  Nowhere has Mr. Dalrymple ever claimed that any Acadia stock price reaction would be ***immediate***.

announced the failed private equity deal also referenced a "bear raid" on Acadia's stock due to "some nasty stuff going around on Acadia," which Ms. Allen ignored. Finally, discovery proves that the private equity deal fell through, in part, precisely because of issues related to quality of care, staffing, and regulatory compliance – thus, even accepting Defendants' contentions, the impact on Acadia's stock price on November 16, 2018 is exclusively related to the alleged fraud.

### 1. Defendants' Analysis of 15 Minutes of Intraday Trading Is Meaningless

Defendants concede there was a statistically significant stock price decline on November 16, 2018 – the day the *Seeking Alpha* article was published. But Defendants wrongly assert that because there were relatively minor stock movements in the first 15 minutes of trading, after the *Seeking Alpha* article was published but before CNBC's David Faber announced that a potential acquisition of Acadia had stalled, it was solely the CNBC report that moved the stock that day.

First, like the *Aurelius Value* report, the *Seeking Alpha* article revealed complex information regarding adverse patient events at Acadia facilities, and market professionals covering the behavioral health sector agreed "that it takes time to assess allegations such as those." Ex. D; *see also* Ex. C. And while Ms. Allen acknowledges this reality when examining the *Aurelius Value* report (although for only a two-hour window), she draws her conclusion after barely 15 minutes of trading with respect to the *Seeking Alpha* article. In doing so, Ms. Allen is erroneously "ascribing to the markets a nearly mystical ability to ***immediately*** assimilate" information, a principle that finds no support in the case law or the academic literature, and demonstrates that her opinion is unreliable. *Grae v. Corr. Corp. of Am.*, No. 3:16-cv-2267, 2021 WL 1100799, at *23 (M.D. Tenn. Mar. 23, 2021); *see also* §II.C.1., *supra*.

Second, Defendants' argument fails to account for the fact that, in the very same CNBC segment that announced the stalled private equity deal, Mr. Faber also addresses a "bear raid" on

- 10 -

Acadia's stock due to "some nasty stuff going around on Acadia." Ex. L. When asked about this, Ms. Allen wrongly understood that "the stalled sale" was "the only thing [Mr. Faber is] talking about." Allen Depo Tr. at 90:11-13. Defendants' failure to address the fact that Mr. Faber's report addressed negative news on Acadia beyond the status of the sale process is fatal to their price impact challenge, as they themselves acknowledge that this issue would be a dispute "of loss causation, and not price impact . . . if the parties were arguing over which piece of information in the same press release caused the price decline." Opp. at 19. That is precisely what is happening with respect to the CNBC segment, which acknowledged **both** the reports of quality issues and the failure of the acquisition.[7]

Finally, Defendants acknowledge that at least one media outlet, *Motley Fool*, directly attributed to the falling share price on November 16, 2018 to the *Seeking Alpha* article, reporting that Acadia's "[s]hares fall hard after a short-seller takes aim at the company." Ex. N. On that basis alone, Defendants cannot meet their high burden of proving a complete lack of price impact.

## 2. Defendants' Other Stated Reason for the Price Decline on November 16, 2018 Was Directly Related to the Fraud

Even if Defendants could prove that **100%** of the stock price reaction on November 16, 2018 was caused solely by a leak of the failed private equity buyout – which they cannot – they still would be unable to prove a complete lack of price impact for the alleged misstatements concerning quality of care, staffing, and regulatory compliance, because those misstatements and the failed private equity buyout are linked. As courts in the Sixth Circuit acknowledge, "'[m]aterialization of risk' refers to a situation where a party's fraud is revealed, not by an express disclosure of the truth, but by

---

[7]    Defendants wrongly claim that the author of the *Seeking Alpha* article "conced[ed] that the cause of the stock price movement on November 16th was the CNBC report and not his . . . article." Opp. at 17. In truth, the author tied the CNBC announcement directly to his November 16, 2018 article: "If my article is what David Faber referred to as 'some nasty stuff,' I don't necessarily disagree." Ex. M.

a fraudulently concealed risk's coming to fruition." *Grae*, 330 F.R.D. at 496 n.5; *see also Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 385 (6th Cir. 2016). ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████  ████████████████

████████████████████  *See* Dalrymple Rebuttal, §III.B.3.

   In the weeks following the *Aurelius Value* report and leading up to the *Seeking Alpha* article, analysts appeared hopeful that any risks associated with Acadia's quality of care and staffing issues could be mitigated under the reduced visibility of a private takeover of the Company. *See* Dalrymple Rebuttal, ¶51. As Mr. Dalrymple explains, however, "[o]nce the expectations of a private takeover were diminished, the proceeding sell-off would have reflected not only the reduced likelihood of an acquisition, but also the lack of relief from scrutiny of the issues revealed by the corrective disclosures." *Id.* at 52. While Defendants and Ms. Allen ignore this interplay, market participants did not. For instance, as described by Cantor Fitzgerald on November 16, 2018: "CNBC reports that ACHC's sales process has stalled . . . ***we expect the initial read-through by many is that ACHC's problems are more challenging than expected***." Ex. O. ████████████████████

████████████████████████████████████████████████████

███  *See* Dalrymple Rebuttal, §III.B.3.

████████████████████████████████████████████████

████████████  Ex. P. ████████████████████████

████████████████████████████████████████████████████

███  *Id.* This discussion continued a few days later:

████████████████████████████████████████████████████

████████████████████████████████████████████



Ex. Q. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████. *See* Dalrymple

Rebuttal, ¶¶44-47; Exs. R, S.

███████████████████████████████████████

███████████████████████████████████. *See* Dalrymple

Rebuttal, ¶¶48-49. ██████████████████████████████████

████████████████████████████████████. *Id.*

███████████████████████████████████████

███████████████████████████████████████

████████████████████. Ex. T. Thus, Defendants' assertion that "the

information leading to the decline [on November 16, 2018] was the stalled sale process, which is

unrelated to the alleged fraud," Opp. at 18, ████████████████████

### E. Defendants' Arguments Regarding "Generic" Statements and Other "Similar" News Stories Fail to Establish a Lack of Price Impact

In their final attempt to prove an absence of price impact for the October 11, 2018 and

November 16, 2018 disclosures, Defendants offer two fundamentally flawed arguments regarding:

(1) the "generic nature" of the alleged misstatements; and (2) an analysis of other "similar" news

stories regarding Acadia's quality of care. *See* Opp., §§I.A.2, I.B.2.

First, Defendants' reliance on *Goldman* is entirely misplaced, as the misstatements at issue in

- 13 -

this case are specific misrepresentations that, *inter alia*: Acadia was "meeting the [staffing] needs" to keep up with the Company's aggressive bed-growth strategy while "providing good quality care" (Complaint, ¶124), the Company was continually able to "access the labor to support its growth" (*id.*, ¶126), its "facilities [we]re appropriately staffed" (*id.*, ¶131) and that Acadia was able to "find the personnel to open up [its] beds and staff [its] facilities" (*id.*, ¶147), any potential staffing issues were limited to "very isolated locations" (*id.*, ¶124), and there was "nothing companywide" to be concerned about regarding staffing levels (*id.*, ¶138). Misstatements such as these, most of which were made in direct response to questions from financial analysts, are ***particularly*** material – and would, therefore, affect the stock price. *See Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 597-98 (7th Cir. 2006) (a misstatement "went well beyond puffery" because "it was a direct response to an analyst's inquiry"), *vacated and remanded on other grounds* by *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007); *In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 887-88 (D. Minn. 2011) (misstatements made in response to analyst questions on investor conference calls are material). These are nothing like the statements in *Goldman*, which were characterized as generic (*e.g.*, "'[o]ur clients' interests always come first'"; "'[i]ntegrity and honesty are at the heart of our business'"), and even there, the district court found the statements were nevertheless material to investors due to Goldman's undisclosed conflicts. *Goldman*, 141 S. Ct. at 1959.[8]

Second, Ms. Allen's analysis of 22 news reports of "similar disclosures regarding quality of care issues at Acadia's U.S. facilities," Allen Report, ¶¶48-53, suffers from numerous critical flaws, and cannot be used to draw any conclusions about the price impact of the *Aurelius Value* report or

---

[8] Similarly, Defendants' claim that Plaintiffs' investment manager did not ***directly*** rely on the alleged misrepresentations has no relevance in a fraud-on-the-market case. The Supreme Court has repeatedly "recognized that requiring such direct proof of reliance 'would place an unnecessarily unrealistic evidentiary burden on the Rule 10b-5 plaintiff who has traded on an impersonal market.'" *Halliburton II*, 573 U.S. at 267 (quoting *Basic*, 485 U.S. at 245).

the *Seeking Alpha* article.  Ms. Allen could not give any credible explanation as to how those news stories were selected, who was responsible for selecting the 22 articles, or who was responsible for determining the selected articles were "corrective."[9]  Allen Depo Tr. at 104:23-108:9.  Nor could Ms. Allen confirm whether or not the news articles selected in her analysis related to issues that had been previously reported (many of them had).  *Id.* at 112:6-9; Dalrymple Rebuttal, ¶56.  Ms. Allen also admitted that: (1) if the information in those articles had been previously reported, then she wouldn't expect to see an impact in the stock price; and (2) in any event, she would not expect the report of a single patient incident at a single Acadia facility to impact investors' expectations of future earnings.  *Id.* at 113:23-114:9, 115:10-20.  That is, Ms. Allen designed an analysis in which she admittedly did not expect to see any evidence of price impact, and is attempting to offer that flawed analysis to prove a lack of price impact.  Such an opinion is clearly unreliable and falls woefully short of proving a complete lack of price impact.  Again, "it is Defendants' burden to show, by a preponderance of the evidence, the absence of price impact, and they cannot meet that burden by pointing to a handful of dates and suggesting, without further explanation, that one should have seen price impact on those dates but did not."  *Fiat Chrysler Autos.*, 327 F.R.D. at 46.

## III.    PLAINTIFFS ARE ENTITLED TO THE *AFFILIATED UTE* PRESUMPTION OF RELIANCE

Plaintiffs have established that, in addition to the *Basic* presumption, they are also entitled to invoke the *Affiliated Ute* presumption of reliance, which applies in cases that "involv[e] primarily a failure to disclose."  *Affiliated Ute*, 406 U.S. at 153; *see* Motion at 18-19.  Defendants erroneously argue that the *Affiliated Ute* presumption "does not apply where, as here, Plaintiffs challenge

---

[9]    Notably, while all 22 articles cited by Ms. Allen concern facilities owned by Acadia, **more than half of them do not even mention Acadia**.  Even then, one would not expect local news stories about isolated patient incidents to immediately affect Acadia's stock price.  Judge Trauger rejected an identical contention from Ms. Allen just last year.  *Grae*, 2021 WL 1100799, at *23.

- 15 -

affirmative misrepresentations."[10]  Opp. at 21.  In making this argument, "[D]efendant[s] ignore[]

cases where courts find that the combination of omissions and misrepresentations does not preclude

invocation of the [*Affiliated Ute*] presumption with respect to those omissions."  *Cosby*, 2021 WL

1828114, at *6; *In re Firstenergy Corp.*, No. 2:20-cv-3785, 2022 WL 681320, at *26 (S.D. Ohio

Mar. 7, 2022).  Indeed, "[w]here plaintiffs' claims are based on a combination of omissions and

misstatements, courts have acknowledged the applicability of the *Affiliated Ute* presumption as to

the element of reliance with regard to alleged omissions."  *Burges*, 2017 WL 2772122, at *10.  "This

result makes sense considering that 'the theory behind the *Affiliated Ute* presumption . . . is not

undermined simply because a defendant makes misstatements at the same time it omits material

information.'"  *Dodona I*, 296 F.R.D. at 270.

        Here, the Complaint specifically alleges Defendants' omissions, including that they "omitted

material information necessary to make [the statements made] not misleading" concerning the

---

[10]     Importantly, the cases relied upon by Defendants are almost entirely taken from inapposite
procedural contexts.  *See Cox v. Collins*, 7 F.3d 394 (4th Cir. 1993) (hearing post-trial appeal; not a
class action); *Joseph v. Wiles*, 223 F.3d 1155, 1162-63 (10th Cir. 2000) (reversing trial court's grant
of motion to dismiss), *abrogated on other grounds by Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
137 S. Ct. 2042 (2017); *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213 (D.C. Cir. 2010)
(affirming trial court's grant of motion to dismiss); *Schwartzman v. Morningstar, Inc.*, No. 12-1647,
2014 WL 3843875, at *22 (E.D. Pa. Aug. 5, 2014) (making findings of fact and conclusions of law
following a bench trial; not a class action); *Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999)
(affirming trial court's decertification, at the summary judgment stage, of a class that had already
been certified); *Clayton, Jr. v. Heartland Res., Inc.*, No. 1:08CV-94-JHM, 2010 WL 4778787, at *5
(W.D. Ky. Nov. 16, 2010) (denying plaintiffs' summary judgment motion; not a class action).  The
Court should decline Defendants' invitation to "rule on the merits of the reliance issue at the stage of
class certification" because "'the office of a Rule 23(b)(3) certification ruling is not to adjudicate the
case; rather, it is to select the method best suited to adjudication of the controversy fairly and
efficiently.'"  *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 270 (S.D.N.Y. 2014)
(quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)).  The only class
certification decisions Defendants provide are distinguishable because plaintiffs in those cases
alleged omissions that were nothing more than the fact that the alleged misrepresentations were not
true.  *Compare Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, No. 16-112 (MN)
CONSOLIDATED, 2020 WL 5026553, at *5 (D. Del. Aug. 25, 2020); *In re Silver Wheaton Corp.
Sec. Litig.*, No. 2:15-cv-05146-CAS (JEMx), 2017 WL 2039171, at *11-*12 (C.D. Cal. May 11,
2017); *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 193 (3d Cir. 2001), *with* ¶¶129, 148, 157.

- 16 -

quality of care, staffing levels, and the regulatory compliance of Acadia's facilities. ¶¶129, 148, 157; ECF No. 54 at 10 ("Defendants' statements about having some patient incidents did not come close to revealing or disclosing the systemic staffing and widespread past and ongoing patient issues alleged."). The omitted facts set forth in those paragraphs of the Complaint are "not simply correcting a lie but highlighting new categories of information that were previously unknown and filling in gaps." *Cosby*, 2021 WL 1828114, at *7. The *Affiliated Ute* presumption unquestionably applies, and Defendants have failed to rebut the presumption.

## IV. COMMON ISSUES PREDOMINATE AS TO PLAINTIFFS' SCHEME CLAIMS

Defendants' contentions that Plaintiffs' scheme claims should not be certified are baseless. First, Defendants assert the scheme claim "overlaps [entirely] with the alleged misrepresentations" and that the Complaint "never explains what that scheme consisted of, other than the allegedly false and misleading statements." Opp. at 23, 28. Even if this were true, Defendants never explain what relevance this has to class certification.[11]

In any case, Defendants ignore a *21-page section of the Complaint* describing Defendants' wrongful course of conduct. Complaint at §IV. In substance, the Complaint "'alleges that the defendants' entire business model, beyond any misstatements or omissions, [wa]s deceptive.'" ECF No. 47 at 5 (quoting *SEC v. SeeThruEquity, LLC*, No. 18 Civ. 10374(LLS), 2019 WL 1998027, at *5 (S.D.N.Y. Apr. 26, 2019)). Even if it did not, Defendants' assertions that the alleged scheme cannot overlap with Plaintiffs' misrepresentation and omission allegations is wrong. The Supreme Court

---

[11] Defendants did not move to dismiss Plaintiffs' scheme claim, thereby waiving the issue. ECF No. 47 at §III.A. Defendants' suggestion that they did not seek dismissal of Plaintiffs' scheme claim because the allegations were "conclusory," and inadequately pled, is preposterous. ECF No. 50 at 2 n.2. The very purpose of a motion to dismiss is "to test the sufficiency of the complaint. The first step in testing the sufficiency of the complaint is to identify any conclusory allegations." *Doe v. Simpson*, No. C-1-08-255, 2009 WL 2591682, at *1 (S.D. Ohio Aug. 19, 2009).

- 17 -

has held that the "dissemination of false or misleading material . . . easily" overlaps with the definition of a scheme "to defraud an investor under subsection (a)." *Lorenzo*, 139 S. Ct. at 1101, 1105. *Lorenzo*, therefore, "effectively abrogated the line of cases on which defendants rely and permits liability under Rule 10b-5(a) and (c)." *SEC v. Kameli*, No. 17 C 4686, 2020 WL 2542154, at *14 (N.D. Ill. May 19, 2020); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021), *cert. denied*, *Alphabet v. Rhode Island*, 142 S. Ct. 1227 (2022) (*Lorenzo* "foreclosed" "argument that Rule 10b-5(a) and (c) claims cannot overlap with Rule 10b-5(b) statement liability claims" as "'considerable overlap' exists among the [10b-5] subsections."); *In re Firstenergy Corp.*, 2022 WL 681320, at *7 ("Scheme liability may rest in part on the same statements or omissions that trigger misstatement liability, or it may embrace separate statements or conduct."); *Puddu v. 6D Glob. Techs., Inc.*, No. 15-cv-8061 (AJN), 2021 WL 1198566, at *11 (S.D.N.Y. Mar. 30, 2021) ("[S]cheme liability" can be established "by pointing to alleged misrepresentations or omissions.").[12]

Second, Defendants incorrectly claim Plaintiffs are not entitled to a presumption of reliance with respect to their scheme claims because of a purported "inapplicability" of either the *Basic* or *Affiliated Ute* presumption. Opp. at 25-27. However, where, as here, Plaintiffs' scheme claims include misstatements and omissions, both *Basic* and *Affiliated Ute* are available. *In re Firstenergy Corp.*, 2022 WL 681320, at *26 (finding both *Basic* and *Affiliated Ute* applicable to scheme claims);

---

[12] Defendants cite numerous decisions predating *Lorenzo*, which, in addition to being irreconcilable with *Lorenzo*, are also inapposite. Opp. at 23. *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 176 (2d Cir. 2005) (dismissal affirmed on appeal where the complaint was "missing . . . the necessary allegations of fact" supporting defendants' scheme to defraud); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 586 (S.D.N.Y. 2016) (plaintiffs' scheme claims were not "plausibly pleaded"); *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 941 (9th Cir. 2009) (no actionable omissions alleged). Here, the Court has already upheld Plaintiffs' scheme claims. ECF No. 54. Defendants' post-*Lorenzo* authority does not support a different conclusion. *SEC v. Rio Tinto PLC*, No. 17 Civ. 7994 (AT) (DCF), 2021 WL 818745 (S.D.N.Y. Mar. 3, 2021), has been certified for interlocutory appeal on this very question. *SEC v. Rio Tinto PLC*, No. 21-2042 (2d. Cir.). *In re Teva Sec. Litig.*, No. 3:17-cv-558 (SRU), 2021 WL 1197805, at *6 (D. Conn. Mar. 30, 2021), relies on *Rio Tinto*, and, in any event, its discussion of *Lorenzo* was *dicta*.

- 18 -

*see also Burges*, 2017 WL 2772122, at *10 ("Where plaintiffs' claims are based on a combination of omissions and misstatements, courts have acknowledged the applicability of the *Affiliated Ute* presumption as to the element of reliance with regard to alleged omissions."); *Cosby v. KPMG, LLP*, No. 3:16-CV-121-TAV-DCP, 2020 WL 3548379, at *26 (E.D. Tenn. June 29, 2020), *report and recommendation adopted*, No. 3:16-CV-121-TAV-DCP, 2021 WL 1828114 (E.D. Tenn. May 7, 2021) (same); *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 332 F.R.D. 556, 572-73 (M.D. Tenn. 2019), *order clarified*, 334 F.R.D. 118 (M.D. Tenn. 2019), *and leave to appeal denied sub nom. In re Cmty. Health Sys., Inc.*, No. 19-0509, 2019 WL 5549319 (6th Cir. Oct. 23, 2019) ("[T]he putative class is entitled to a presumption of reliance under *Basic's* fraud-on-the-market theory and *Affiliated Ute's* omission doctrine."); *Thiemann v. OHSL Fin. Corp.*, No. C-1-00-793, 2001 WL 34142349, at *5 (S.D. Ohio Sept. 14, 2001) (common questions predominated under *Basic*'s fraud-on-the-market theory and *Affiliated Ute*'s omissions doctrine).[13]

Finally, *Comcast* provides no basis for denying certification of Plaintiffs' scheme claims. There, the Supreme Court held that in order to satisfy Rule 23's predominance requirement, plaintiffs need only present a model demonstrating that damages can be calculated on a classwide basis consistent with their theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013). Here, Plaintiffs' expert has done just that. To be clear, Plaintiffs have a single theory of liability with respect to §10(b), which is that Defendants engaged in a fraudulent scheme and made material misstatements and omissions throughout the Class Period, and when the facts concealed by "defendants' prior misrepresentations and fraudulent conduct began to leak out and became apparent

---

[13] The scheme need not have been "publicly revealed," in order for *Basic* to apply. *See* Opp. 120 at 24. "[D]efendants accused of securities fraud should not escape liability by simply avoiding a corrective disclosure." *Ohio Pub. Emps. Ret. Sys.*, 830 F.3d at 385. For this reason, the Sixth Circuit has recognized the materialization of the risk theory of loss causation, where "a party's fraud is revealed, not by an express disclosure of the truth, but by a fraudulently concealed risk's coming to fruition." *Grae*, 330 F.R.D. at 496 n.5.

to the market, it caused the price of Acadia securities to fall precipitously as the prior artificial inflation came out of the stock price." Complaint, ¶179.

For this reason, Defendants' assertion that Plaintiffs "[have] fail[ed] to present a viable damages model for their scheme claim," is misplaced.[14] Opp. at 28-29. Mr. Dalrymple's ability to calculate classwide damages is not dependent on how Defendants' alleged misconduct "is characterized from a legal perspective." Dalrymple Rebuttal, ¶62. And because the same loss causation allegations apply to the alleged misstatements, omissions and scheme, Defendants assertion "that the truth of that scheme," was never publicly revealed, Opp. at 24, 27, 29, is also baseless. Dalrymple Rebuttal, ¶63; Complaint, ¶193 ("The economic loss, *i.e.*, damages, suffered by plaintiffs and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the price of Acadia securities and the subsequent significant decline in the value of Acadia securities when defendants' prior misrepresentations and other fraudulent conduct were revealed.").

## V.     CONCLUSION

The Motion should be granted.

DATED: April 1, 2022                                   Respectfully submitted,

                                                       ROBBINS GELLER RUDMAN
                                                         & DOWD LLP
                                                       JERRY E. MARTIN, #20193
                                                       CHRISTOPHER M. WOOD, #032977


                                                              s/ Christopher M. Wood
                                                       _____
                                                       CHRISTOPHER M. WOOD

---

[14] Mr. Dalrymple's discussion of his ability to calculate classwide damages is more than adequate at the class certification stage. *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 137-38 (M.D. Tenn. 2020) (Defendants "place too great a burden on Lead Plaintiff at this juncture.").

- 20 -

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)
jmartin@rgrdlaw.com
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
DARREN J. ROBBINS
DARRYL J. ALVARADO
J. MARCO JANOSKI GRAY
TING H. LIU
T. ALEX B. FOLKERTH
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
dalvarado@rgrdlaw.com
mjanoski@rgrdlaw.com
tliu@rgrdlaw.com
afolkerth@rgrdlaw.com

Lead Counsel for Plaintiffs

DOWD, BLOCH, BENNETT, CERVONE,
   AUERBACH & YOKICH
JUSTIN J. LANNOYE
8 South Michigan Avenue, 19th Floor
Chicago, IL 60603
Telephone: 312/372-1361
312/372-6599 (fax)
jlannoye@laboradvocates.com

Counsel for Chicago & Vicinity Laborers'
District Council Pension Fund

PITTA LLP
MICHAEL BAUMAN
120 Broadway, 28th Floor
New York, NY  10271
Telephone: 212/652-3890
212/652-3891 (fax)
mbauman@pittalaw.com

Counsel for New York Hotel Trades Council &
Hotel Association of New York City, Inc. Pension
Fund

4864-5297-2570.v1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 1, 2022, I authorized the electronic

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I

hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
    & DOWD LLP
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)


Email: cwood@rgrdlaw.com

## Mailing Information for a Case 3:18-cv-00988 St. Clair County Employees' Retirement System v. Acadia Healthcare Company, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **AMALGAMATED BANK, TRUSTEE**
  PKNASHLAW@AOL.COM

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **BOSTON RETIREMENT SYSTEM**
  PKNASHLAW@AOL.COM

- **Michael Bauman**
  mbauman@pittalaw.com

- **Paul Kent Bramlett**
  pknashlaw@aol.com

- **Lisa R. Bugni**
  lbugni@kslaw.com

- **Thomas H. Burt**
  burt@whafh.com

- **Regina M. Calcaterra**
  calcaterra@whafh.com

- **Jessica Perry Corley**
  jpcorley@kslaw.com

- **Patrick Donovan**
  donovan@whafh.com

- **Timothy Alexander Benwa Folkerth**
  afolkerth@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Elizabeth O. Gonser**
  egonser@rwjplc.com,nnguyen@rwjplc.com

- **J. Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Matthew M. Guiney**
  guiney@whafh.com

- **Brandon R. Keel**
  bkeel@kslaw.com

- **Justin J. Lannoye**
  jlannoye@laboradvocates.com

- **Ting H. Liu**
  tliu@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jerry E. Martin**
  jmartin@barrettjohnston.com,jkarsten@barrettjohnston.com,ealexander@barrettjohnston.com,jmartin@rgrdlaw.com

- **Milton S. McGee , III**
  tmcgee@rwjplc.com,EWard@kslaw.com,dgibby@rwjplc.com

- **Thomas C. Michaud**
  tmichaud@vmtlaw.com

- **Danielle S. Myers**
  danim@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **PLYMOUTH COUNTY RETIREMENT ASSOC**
  PKNASHLAW@AOL.COM

- **Steven Allen Riley**
  sriley@rwjplc.com,dgibby@rwjplc.com

- **Ronni D. Solomon**
  rsolomon@kslaw.com

- **David C. Walton**
  davew@csgrr.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,agonzales@ecf.courtdrive.com,CWood@ecf.courtdrive.com,agonzales@rgrdlaw.coom,e_file_sd@rgrdlaw.com,kjohnson@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`